IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
────────────────────────────────────

GWENETH KOPPERS,

                Plaintiff,          **15-CV-0621T**

      -v-                  **DECISION AND ORDER**

CAROLYN W. COLVIN, ACTING
Commissioner OF Social Security,

                Defendant.

────────────────────────────────────

Gweneth Koppers ("plaintiff") brings this action under Title II of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("Commissioner" or "defendant") improperly denied her applications for supplemental security income ("SSI") and disability insurance benefits ("DBI").

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons set forth below, plaintiff's motion is granted  and defendant's motion is denied.

## PROCEDURAL HISTORY

On March 19, 2012, plaintiff filed applications for DIB and SSI alleging disability as of February 5, 2011 due to depression, anxiety, PTSD, and seizure disorder. Administrative Transcript ("T.") 29, 178.  Following a denial of her applications on October 18, 2012, plaintiff testified at a hearing, held at plaintiff's request, on December 12, 2013 before administrative law judge ("ALJ") Eric L. Glazer.  T. 26-59.  An unfavorable decision

was issued on February 28, 2014, and a request for review was denied by the Appeals Council on May 19, 2015.

Considering the case *de novo* and applying the five-step analysis contained in the Social Security Administration's regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ made the following findings: (1) plaintiff met the insured status requirements of the Act through September 30, 2016; (2) she had not engaged in substantial gainful activity since February 5, 2011, the date of the onset of her alleged disability; (3) her affective disorder and substance addiction disorder were severe impairments (20 C.F.R §§ 404.1520(c) and 416.920(c)); (4) her impairments, singly or combined, did not meet or medically equal the severity of any impairments listed in 20 CFR Part 404 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926); and (5) plaintiff had the residual functional capacity to perform a full range of work at all exertional levels with the nonexertional limitation of occasional contact with others.  T. 15-17.  The ALJ also found that plaintiff was capable of performing past relevant work as a kitchen worker, with a medium exertion level, and a ride operator, with a light exertion level. T. 21.

## DISCUSSION

I.  **General Legal Principles**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits.

Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007).  The Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999), quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam).  Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record as a whole and whether the Commissioner's conclusions are based upon an erroneous legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).

Plaintiff, 37 years old, testified that she had been attending college for two years, with a major in general studies and business administration, but was "just barely" passing her classes. T. 32. She had previously obtained an Associate's degree in medical assistance and made a promise to her now deceased son that she would continue her education.  Her employment history included work

in grain store sales, fast food, and as a children's train ride operator for the Zoological Society. She also worked in food service with Subway for ten years. Plaintiff testified that her depression, PTSD, anxiety, and "the lack of really dealing with human beings in general" were her most severe and disabling problems. T. 35. She was terminated from her most recent position as a children's train ride operator due to a disagreement over her request for bathroom breaks.

Plaintiff had a "very unsatisfactory outlook[]" on "dealing with the public" and was struggling with the stress of her college work. T. 38-39. Plaintiff's seizure disorder was well controlled since 2012 with a high-potassium diet and no medication. Plaintiff, who resided with her sister and long-time boyfriend, testified that, due to her depression, she does not shower or do housework unless "absolutely forced" to do so, testifying: "I wouldn't do with anything[;] if I don't have to clean house, I won't. If I don't have to do dishes, I won't. If I don't have to do laundry, I won't. If I don't have to cook, I won't." T. 41, 49. Her symptoms included wanting to harm herself and others and feeling generally destructive, which was triggered by "[a] dirty look, a child, a kid looking just like [her] son," or her daughter saying "something totally nasty." T. 46. She experienced anxiety "all the time," testifying that she was having a panic attack "right now" at the hearing. T. 47. Her PTSD symptoms included "a

lot of crying." T. 48.  She also had trouble getting along with people and testified that she "get[s] nasty with" them when she is stressed. T. 48.  Plaintiff further testified that she gets an average of three hours of sleep "on any given week," with no naps. T. 49.  Plaintiff acknowledged a history of marijuana use but testified that she had recently ceased this activity.

Plaintiff lost her hearing in her right ear after undergoing surgery for hereditary otosclerosis.  Plaintiff further testified that she had trouble focusing during her classes and felt incapable of doing homework.  She enjoyed making blankets and studying her genealogy.

## II.  **The Commissioner's RFC Assessment is Not Supported by Substantial Evidence in the Record.**

### A.  **Weight of the consulting examiner's opinion.**

Plaintiff contends that remand is required because the ALJ failed to provide proper explanation for failing to incorporate into the RFC assessment the opinion of consultative examiner Dr. Susan Santarpia that plaintiff had "mild impairment in learning new tasks, making appropriate decisions, relating adequately with others, and appropriately dealing with stress . . . mild to moderate impairment . . . in performing complex tasks independently." T. 280-281.

The record reveals that when Dr. Santarpia examined plaintiff in 2012, plaintiff reported that she was attending counseling sessions and did not have any anxiety-related symptoms, thought

disorders, panic attacks or manic symptoms. She was using marijuana "[a]s often as possible" at the time and Dr. Santarpia noted that plaintiff's "depression, irritability, and agitation may have their etiology based on chronic marijuana use." T. 279. Plaintiff was cooperative but irritated, and her manner of relating and overall presentation were poor. Her attention and concentration were intact, but her recent and remote memory skills were impaired "due to suspected lack of effort." T. 280. Plaintiff's cognitive functioning was in the low-average range and her insight and judgment were poor. Plaintiff could attend to her personal hygiene but could not cook, clean, do laundry or shop, and reported spending her days "doing nothing" with no social engagement despite living with her boyfriend and sister. Dr. Santarpia diagnosed Plaintiff with adjustment disorder and cannabis dependence/abuse and opined that plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, and maintain a regular schedule within normal limits. Dr. Santarpia further assessed plaintiff with a mild impairment in learning new tasks, making appropriate decisions, relating adequately to others, and dealing with stress and a mild to moderate impairment in performing complex tasks independently.

In his decision, the ALJ summarized Dr. Santarpia's opinion that the results of her evaluation "appeared to be consistent with

psychiatric problems, which may acutely interfere with [plaintiff's] ability to function on a daily basis." T. 19.  The ALJ afforded this opinion "some weight," "including the observation that symptoms presented by [plaintiff] may be at least partially attributed to her chronic use of marijuana." T. 19.  The ALJ then accorded "great weight" to the doctor's conclusion that plaintiff's "'dysphoric mood, irritability and agitation may have their etiology based in chronic marijuana use'" in the "context of historic and pervasive marijuana use documented throughout the record. T. 20.  The ALJ further noted that "[s]uch use . . . may have explained both the bizarre behavior of the claimant causing her to he terminated from employment by her employer (where she had been employed seasonally for three consecutive seasons) and her erratic employment pattern generally." T. 20.

ALJ also makes following findings in his decision:

> [T]he clinical records regarding her depression and anxiety treatment do not reflect treatment for isolative behavior or psychoses, but [plaintiff] in her activity report indicates avoidance of social interaction and panic reactions.  While low mood and some anxiety may reasonably have followed the traumatic loss of [her 14-year-old son] two years prior, the clinical notes depict normal recovery from bereavement without the degree of dysfunction the claimant reports.  Throughout the clinical records, the claimant displays refusal to follow providers' recommendations for reasons not shown in the records to be caused in any way by her diagnosed conditions.

T. 20 (internal citations omitted).  The ALJ then goes on to "give significant weight to the opinion of consultative examiner,

Dr. Santarpia, especially in the context of historic and pervasive marijuana use documented throughout the record" but only some weight to the opinion of the state agency reviewing physician, Dr. Echevarria because "it is inconsistent with the consultative examiner's findings." T. 20.

Plaintiff argues that the ALJ erred by failing to explain the selective weighing of Dr. Santarpia's opinion, which discredits only the portions that were beneficial to plaintiff's application. This Court agrees and finds that there is no clearly supported basis set forth in the ALJ's decision for his assignment of some weight to certain parts of Dr. Santarpia's decision and great or significant weight to others. This determination is rendered more unclear by the ALJ's unsupported finding that the non-examining opinion of Dr. Echevarria is inconsistent with Dr. Santarpia's assessment of plaintiff's nonexertional limitations.

The ALJ notes that although Dr. Echevarria, who conducted a psychiatric review assessment on October 11, 2012, opined that plaintiff's impairments were not severe, he found that the claimant had mild limitations with activities of daily living; mild limitations with social functioning; mild limitations with concentration, persistence and pace and no episodes of deterioration. Plaintiff did appear to be able to perform simple tasks, learn new tasks, maintain attention and concentration and a regular schedule.

With respect to plaintiff's mental health treatment records, the ALJ described treatment notes from Monsignor Carr Mental Health in 2011 revealing that the plaintiff was assessed with an adjustment disorder with depressed mood and mixed anxiety, depressive disorder, and a global assessment function ("GAF") score of 58, indicating "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning." T. 18. A follow-up visit on May 2, 2012 revealed that plaintiff's GAF score was 65, which "indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful relationships." T. 18.  The ALJ found, however, that plaintiff's daily marijuana use and refusal to see a social worker at that time raised "doubt concerning [her] motivation for optimum management of her symptoms." T. 18.

Treatment notes from the Community Health Center of Buffalo, reveal that, as of June 2012, plaintiff: was using marijuana on a daily basis; refused to, or was otherwise noncompliant with, taking her medication; and was "extremely difficult[] and non-compliant" with treatment. T. 263.  Records from plaintiff's treating therapist, Kendra Washington, a licensed certified social worker-registered, reveal that by September 2013, plaintiff

reported that she was doing better and was more motivated upon her return to school.  Plaintiff continued to report that things were going well for her throughout September, October, and November 2013, the most recent period of treatment reported in the record.

It is well settled that, in resolving the evidence, the ALJ is entitled to accept parts of a doctor's opinion and to reject others. *See Veino v. Barnhart*, 312 F.3d 578, 588-89 (2d Cir. 2002). Based on the foregoing, however, the Court finds that it is unable to adequately review the ALJ's decision because he has failed to: explain in the weight given to the opinion of the state agency psychological consultant; set forth a clearly supported basis for the RFC finding; or determine, in light of the record evidence concerning plaintiff's significant substance abuse, to what extent her mental limitations would remain, if any, in the absence of the substance abuse. *See* 20 C.F.R. § 416.927(e)(2)(ii); *Zayas v. Colvin*, 2016 WL 1761959, at *4 (W.D.N.Y. 2016) ("It is unclear to this Court how the ALJ arrived at the RFC and thus it is not supported by substantial evidence").  Upon remand, the ALJ is, therefore, directed to fully explain the varying selective weights afforded to various aspects of Dr. Santarpia's opinion and explicitly substantiate his RFC finding with record evidence.

**B.    Determination of plaintiff's ability to perform past relevant work.**

As a corollary issue, plaintiff contends that the ALJ erred in failing to consult with a vocational expert ("VE") due to the nonexertional limitations indicated in the record. At Step Four of the sequential evaluation process, the ALJ must determine whether plaintiff's impairments prevent her from doing her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(IV), 416.920(a)(4)(IV). The ALJ may obtain testimony from a vocational expert to obtain evidence needed to determine whether the claimant can still perform her past relevant work. *See* 20 C.F.R § 404.1566(b)(2). Here, in light of the Court's finding that the ALJ's RFC determination is not supported by substantial evidence, upon remand, the ALJ is further directed to consult a VE for testimony as to whether a person with the mental limitations imposed by plaintiff's impairments can meet the demands of her previous work. In his decision, the ALJ found that plaintiff was capable of performing the past relevant work of a kitchen worker and ride operator. While the decision to call a VE to provide testimony or other evidence pertaining to an individual's residual functional capacity for past relevant work is discretionary, the Court finds that the ALJ's finding concerning plaintiff's past relevant work here is not supported by substantial evidence. The ALJ failed to meet his " duty to adequately inquire into the demands of [plaintiff's] past

relevant work so that a correct decision [could] be reached as to [plaintiff's] ability or inability to perform it." *Provost v. Astrue*, 2011 WL 12472551, at *4 (N.D.N.Y. 2011)(internal quotation marks omitted).

Based on a review of the record, the Court concludes that the ALJ's RFC finding is not supported by substantial medical evidence in the record. In light of this finding, the case shall be remanded to the Commissioner for further proceedings, and the Court declines to address plaintiff's remaining contentions. The ALJ's failure to adequately develop the hearing record concerning the demands of plaintiff's past relevant work, combined with his ambiguous evaluation of Dr. Santarpia's findings, requires remand for further consideration of these issues. *See Wood-Monroe v. Astrue*, 2008 WL 4283412, at *6 (N.D.N.Y. 2008), at *6 (reversing decision because the ALJ failed to adequately inquire into the demands of plaintiff's past work, and failed to consult any external sources such as the Dictionary of Occupational Titles or a vocational expert").

## **CONCLUSION**

For the foregoing reasons, the plaintiff's motion for judgment on the pleadings is granted, and the defendant's cross-motion for judgment on the pleadings is denied. The ALJ's decision denying plaintiff's claims for SSI and DIB is not supported by substantial evidence in the record. The case is remanded to the Commissioner

12

for the further proceedings as directed above.  The Clerk of Court is directed to close the case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/ MICHAEL A. TELESCA
_____
HONORABLE MICHAEL A. TELESCA
UNITED STATES DISTRICT JUDGE

DATE:      November 23, 2016
           Rochester, New York